IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Walker D. Miller

Civil Action No. 07-cv-01428-WDM

JEFFREY HANSEN,

Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

Defendant.

---

**MEMORANDUM OPINION AND ORDER**

---

Miller, J.

Claimant Jeffrey Hansen ("Hansen") appeals a final administrative decision by defendant Michael J. Astrue (the "Commissioner") denying his claim for a Period of Disability, Disability Insurance Benefits, and Supplemental Security Income under the Social Security Act (the "Act").

Background

Hansen was born on April 25, 1986. He has a tenth grade education in special education (although he was at one point mainstreamed in the "regular room"). (Admin. R. at 85–86.) He has never engaged in substantial gainful activity as the ALJ determined that working as a buser/mucker in a restaurant, Hansen's only past work experience, did not qualify as substantial gainful activity. Hansen alleges that he became disabled on September 29, 2000 due to bipolar disorder, Attention Deficit

Hyperactivity Disorder ("ADHD"), seizures, mental disease, hypothyroidism, and substance abuse (in treatment).[1] Hansen was insured for disability benefits through June 30, 2005.

1. Procedural History

Hansen applied for disability benefits on June 24, 2004 and for supplemental security income benefits on May 17, 2004. The applications were denied. A hearing was held on May 11, 2006 in Colorado Springs, Colorado. Hansen, represented by an attorney, attended and testified at the hearing. A vocational expert and Hansen's mother also attended and testified at the hearing. The ALJ issued his opinion on July 20, 2006 determining that Hansen was not disabled within the meaning of the Act. The ALJ determined that Hansen was not eligible for disability benefits until April 1, 2003, the date he was first insured for Title II purposes. Therefore, although Hansen alleges that he became disabled on September 29, 2000, his onset date was treated as April 1, 2003 and the relevant period under consideration was from April 1, 2003 to June 30, 2005, the date he was last insured. On May 7, 2007 the Appeals Council declined review of the ALJ's decision. Therefore, the ALJ's decision is the final administrative decision subject to review in this Court.

2. Medical History

[1] The ALJ determined that Hansen's drug and/or alcohol abuse/use was not a contributing factor material to his disability and, therefore, a finding of disability was not precluded. *See* 42 U.S.C. § 423(d)(2)(C) ("An individual shall not be considered to be disabled for purposes of this title [42 USCS §§ 401 et seq.] if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled.").

Hansen has a history of seizures as evidenced by an abnormal EEG in 1999. However, at the time of the hearing he had experienced no seizures for three years, either because his medication was working or because the condition subsided. He also has hypothyroidism but this is well controlled with medication.

Hansen also has a history of bipolar disorder and ADHD. He was hospitalized in 2000 for being out of control with mood swings and anger. He was later discharged as stable without any suicidal ideation, improved mood and affect, and a GAF score of 60.[2] Since his hospitalization, Hansen has been evaluated numerous times by various psychiatrists including Dr. Rinsky (his treating psychiatrist), Dr. Dubovsky, Dr. Benson, and Dr. Neufeld. He has not been hospitalized again. Hansen has been prescribed a number of drugs although he has trouble continuing to take the prescribed amount. Hansen has exhibited, *inter alia*, the following difficulties relating to his mental conditions: hyperactivity, impulsivity, mania, depression, paranoia, aural hallucinations, trouble concentrating, and anxiety.

Standard of Review

I review the Commissioner's decision to determine whether his factual findings are supported by substantial evidence in the record as a whole and whether he applied the correct legal standards. *Castellano v. Sec'y of Health and Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994). "Substantial evidence is 'such relevant evidence as a

[2] A GAF is the physician's subjective judgment of the patient's overall level of functioning. *Langley v. Barnhart*, 373 F.3d at 1122, n.3 (10th Cir. 2004). GAF's are based on a scale from 1 to 100 and a "GAF score of 51-60 indicates moderate symptoms, such as a flat affect, or moderate difficulty in social or occupational functioning." *Id.* (internal quotations omitted).

reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988) (citing *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985)). This Court may "neither reweigh the evidence nor substitute [its] judgment for that of the [Commissioner]." *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991).

Discussion

The Secretary has established a five-step evaluation process to determine whether a claimant is disabled for purposes of the Social Security Act. *See Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988). The steps of the evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing [her] past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992). Generally, the burden to prove a disability lies on the applicant, however, at step five the burden shifts to the Commissioner to "show that the claimant retains sufficient residual functional capacity . . . to perform work in the national economy, given his age, education, and work experience." *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

Following this process in this case, the ALJ first determined that Hansen has not engaged in substantial gainful activity at any time during the relevant period because,

although Hansen engaged in work activity during the relevant period, it did not qualify as "substantial gainful activity." In step two, the ALJ identified Hansen's ADHD, affective disorder, anxiety disorder, and history of substance abuse[3] as severe impairments. Based on the medical evidence, the ALJ determined that neither the hypothyroidism or seizure disorder was a severe impairment as they did not "impose[] more than minimal restriction on [Hansen's] physical or mental ability to perform basic work-related activity." (Admin. R. at 17.) The ALJ noted that Hansen's hypothyroidism was well controlled by medication and that his seizure disorder had either subsided or was controlled by medication. At step three, the ALJ determined that Hansen's impairments were not "attended with the specific clinical signs and diagnostic findings required to meet or equal the requirements set forth in the List of Impairments (Appendix 1 to Subpart P, CFR part 404)." *Id.* The ALJ specifically considered sections 12.04 (Affective Disorders) and 12.06 (Anxiety-Related Disorders). He also specifically evaluated Hansen's ADHD impairments under the children's[4] listing for ADHD, 112.11A, in conjunction with section 12.04.

Next, the ALJ determined Hansen's residual functional capacity ("RFC") as follows:

> [E]xertionally, he has no limitations; however, the claimant's non-exertional limitations include no interaction with the general public, and no performance

---

[3] Notably, however, the ALJ determined earlier in the opinion that Hansen's "substance abuse impairment is not 'severe' as that term is defined in the Regulations, and as such, is not 'material' in determining the claimant's disability status." (Admin. R. at 16.) *See* note 1 *supra*.

[4] There is not an adult listing for ADHD.

> of complex tasks (SVP 2 or less). The claimant is limited to work tasks which are simple, rote and repetitive, and in giving him the benefit of the doubt regarding his seizure disorder, the claimant should not work at unprotected heights, around moving machinery or in hazardous work areas.

*Id.* at 24. In so finding, the ALJ noted that "the claimant's mental impairments impose moderate impairment in his daily and social functioning, marked impairment in his capacity to sustain concentration, persistence and pace, and has experienced perhaps 1–2 episodes of decompensation during the relevant time period of this decision." *Id.* As Hansen's past work did not constitute substantial gainful activity, the ALJ did not find Hansen disabled at step four even though the vocational expert concluded that Hansen would be able to return to his previous job of a restaurant helper.

The ALJ did, however, conclude that Hansen was not disabled within the meaning of the Act at step five. The ALJ relied on the testimony of the vocational expert who determined, based on Hansen's RFC and vocational factors, that Hansen was capable of unskilled light and sedentary work such as small products assembler, electronics worker, or surveillance systems monitor. The ALJ determined that significant jobs were available in the national economy which fit within the above described categories even after "erosion in the occupational bases" considering Hansen's need to avoid working around moving machinery. *Id.* at 25. The ALJ also specifically noted that the job availability would be unaffected even if the RFC included a limitation that Hansen was "markedly limited in remembering and carrying out simple job instructions." However, if the RFC included a limitation that the person "was unable to stay on task on an unpredictable basis for 15–30 minutes at a time (and outside normal breaks) or was absent or seriously tardy 2 out of 5 days in a work week", Hansen would

be disabled within the meaning of the Act because he would be unable to hold the identified jobs or any other work of significant numbers in the national economy. Nonetheless, the ALJ determined that these limitations were not supported by the evidence on the record and, therefore, determined that Hansen was not disabled.

On appeal, Hansen alleges that the ALJ erred in four respects:[5] (1) in affording less than controlling weight to the opinion of Dr. Rinsky, Hansen's treating psychiatrist; (2) in determining Hansen's RFC in step four; (3) at steps two and three by not applying the "special technique" required for mental impairments;[6] (4) at step three by not discussing concentration, persistence, and pace; and (5) at step five because the hypothetical did not include all of Hansen's mental impairments, variable moods, or need for structured settings.

1. <u>Dr. Rinsky's Opinion</u>

Hansen argues that the ALJ erred in determining that opinions by Dr. Rinsky, Hansen's treating psychiatrist, were not controlling and entitled to little weight. An ALJ is required to consider submitted medical opinions in addition to the evidence as a whole. 20 C.F.R. § 416.927(b). Generally, treating source opinions are given

---

[5] I do note that in general, Hansen's arguments are essentially that he does not agree with the ALJ's decision and asks that I re-weigh the evidence—a review that I may not undertake. *See Casias*, 933 F.2d at 800 (holding that the reviewing court may "neither reweigh the evidence nor substitute [its] judgment for that of the [Commissioner].").

[6] Although Hansen did not expressly raise this argument, I conclude that it is appropriate to address it as Hansen references the relevant section in his opening brief, albeit in reference to step four, and I ordered additional briefing from the parties on the issue.

controlling weight if they are “well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence in the case file.” *Id.* § 416.927(d)(2). When a treating source opinion is found to be inconsistent with the other substantial evidence in the case file, “the ALJ’s task is to examine the other physician’s reports to see if they outweigh the treating physician’s report, not the other way around.” *Goatcher v. United States Dep’t of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1995) (internal quotation and brackets omitted) (quoting *Reyes v. Bowen*, 845 F.2d 242, 245 (10th Cir. 1988)). Treating sources that are not given controlling weight and all other medical opinions are weighed by evaluation of a number of factors: (1) examining relationship; (2) treatment relationship including the length of relationship and frequency of examination and the nature and extent of the treatment relationship; (3) supportability; (4) consistency; (5) specialization; (6) any other relevant factors. 20 C.F.R. § 404.1527(d). The ALJ must give “good reasons for the weight assigned to a treating physician’s opinion, that are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating sources’s medical opinion and the reason for that weight.” *Langley*, 373 F.3d at 1119 (citation omitted). When a treating source opinion is rejected completely, the ALJ must give “specific, legitimate reasons for doing so.” *Id.* “‘In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion.’” *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002)

(quoting *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)).

The medical opinion at issue in this appeal is that of Dr. Rinsky, who was Hansen's treating psychiatrist from 1999 through the date of the ALJ's decision. Hansen argues that the ALJ "failed to acknowledge that Dr. Rinsky's opinion, if not entitled to controlling weight was still entitled to deference" and that it is not "clear what parts of Dr. Rinsky's opinion the ALJ actually relied upon in reaching his decision." (Op. Br. at 9.) Although very unclear, it appears that Hansen is essentially arguing that the ALJ's determination that Dr. Rinsky's opinion was internally inconsistent and inconsistent with the medical record as a whole was incorrect. In support, Hansen argues that the ALJ ignored some portions of the state agency reviewers' opinions indicating that Hansen was either "not significantly limited" or "moderately limited" in a number of mental and social areas. The Commissioner, on the other hand, contends that the ALJ properly discounted the portions of Dr. Rinsky's opinion that were not consistent with the record as a whole.

The ALJ's opinion includes a detailed analysis of Dr. Rinsky's opinion and the reasons that the ALJ rejected portions of the opinion. (Admin. R. at 20–23.) With respect to internal inconsistency, the ALJ noted that Dr. Rinsky opined that Hansen had difficulties in such areas as judgment, impulse control, forgetfulness, obsessive tendencies, paranoia, depression, motivation, frustration, concentration, social interactions, and inconsistent and variable moods while also opining that Hansen had no impairment his ability to interact with the general public or others, maintain socially acceptable behavior, respond to supervision, communicate, sustain concentration,

follow instructions, handle stress, or respond to changes in a work setting and only slight impairment in his ability to understand and remember simple instructions, make simple work decisions, and get along with coworkers. *Id.* at 21–22. Furthermore, Dr. Rinsky stated in January 2006 that Hansen had the “capacity to understand, remember and carry out simple instructions; make judgments commensurate with functions of unskilled work; respond appropriately to supervisors, co-workers and usual work situations; and to deal with changes in a routine work setting on a sustained basis for 8 hours per day, 5 days per week.” *Id.* at 22.

The ALJ also noted that Dr. Rinsky’s opinions were inconsistent with the other evidence on the record “as other examining sources have indicated that the claimant could perform work activity, despite his impairments, with certain restrictions.” *Id.* Although perhaps not cited explicitly in reference to Dr. Rinsky’s opinion, the ALJ noted throughout his opinion that various other sources indicated Hansen’s ability to perform work: (1) Hansen’s prior boss indicated that Hansen was a good worker “when he wanted to be”; (2) Dr. Dubovsky indicated that Hansen’s communication skills were good and that he could function at a higher level than he was even though he was “not well” and reported problems with depression, hypomania, and anxiety; (3) Dr. Benson stated that Hansen should be able to stabilize his symptoms with proper medication and counseling, that Hansen’s memory was in the average range and his verbal and communication abilities were relatively normal, and that Hansen could perform a job whose tasks were “active and diverse”; and (4) Dr. Neufeld found no indication of paranoia, delusions, or hallucinations, suicidal ideation, social withdrawal, or adhedonia.

Finally, the ALJ noted that the claimant's own testimony did not reveal that he would have trouble performing unskilled work. Notably, credibility determinations are peculiarly the province of the finder of fact and the ALJ is accorded substantial deference in these matters. *Williams v. Bowen* , 844 F.2d 748, 755 (10th Cir. 1988).

Based on the foregoing, I conclude that the ALJ adequately provided legitimate reasons why he gave portions of Dr. Rinsky's opinion little to no weight. In particular, I note that the ALJ engaged in a detailed description of the evidence that he relied upon and reasons for affording some of Dr. Rinsky's opinions no weight. It is clear what weight the ALJ afforded to Dr. Rinsky's opinion and the reasons he had for rejecting the parts he did not rely upon. *See Langley*, 373 F.3d at 1119 (holding that the ALJ must give "good reasons for the weight assigned to a treating physician's opinion, that are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating sources's medical opinion and the reason for that weight." (citation omitted)). I also note that the state agency reviewers' opinions do not change this analysis because the opinions are actually consistent with the record as a whole including the portions of Dr. Rinsky's opinions that the ALJ accepted.

Hansen also appears to present some other undeveloped arguments regarding the ALJ's treatment of medical opinions. First, Hansen argues that the ALJ erred by accepting a portion of Dr. Ryan's opinion without discussing the 20 C.F.R. § 404.1527(d) factors. The ALJ, however, is not required to discuss each factor with respect to each medical opinion. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). Second, Hansen argues that the ALJ erred by overemphasizing favorable parts

of the medical record and underemphasizing unfavorable parts. Although an ALJ may not simply "pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability", *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004), it is not the province of this Court to reweigh the medical evidence, *Casias*, 933 F.2d at 800. As the ALJ noted and discussed much of the medical evidence and only rejected the portions of Dr. Rinsky's opinion that he found were inconsistent, I conclude that the ALJ did not simply ignore the unfavorable portions of the medical record. Rather, the ALJ appropriately weighed the evidence and determined that some of Dr. Rinsky's opinions should be afforded little weight.

2. RFC

Hansen also argues that the ALJ erred in determining his RFC at step four. In support, he makes a number of somewhat undeveloped arguments.

a. *20 C.F.R. § 404.1520a*

First, Hansen argues that the ALJ failed to appropriately apply 20 C.F.R. § 404.1520a at step four by (1) failing to consider the episodic nature of Hansen's limitations and bipolar disorder pursuant to 20 C.F.R. § 404.1520a(c)(2) and (2) failing to describe how Hansen's difficulties in school and work were compatible with his ability to function independently, appropriately, effectively, and on a sustained basis pursuant to 20 C.F.R. § 404.1520a(c)(2). Section 404.1520a describes a "special technique" that the Commissioner must use to evaluate the severity of mental impairments. As this requirement only relates to the ALJ's decision at steps two and three, it is not applicable

to the ALJ's decision at step four.[7]

b. *Special Accommodations*

Hansen argues that the ALJ failed to discuss the effect of necessary special accommodations on his RFC. I disagree. First, I note that Hansen has pointed to no authority requiring the ALJ to discuss necessary accommodations. Furthermore, in determining what work Hansen was capable of, the ALJ took into account Hansen's limitations and any restrictions on the work environment that would be imposed due to Hansen's limitations. Merely because one doctor indicated that an "active and diverse" job would be ideal does not necessitate a specific inclusion of "active and diverse" work in a claimant's RFC.

c. *Lack of Motivation*

Hansen next argues that it is reversible error for the ALJ to attribute Hansen's apparent lack of motivation to sloth. However, the fact that the ALJ noted that Hansen's primary limitation appears to be lack of motivation is not grounds for remand as it does not constitute legal error and is supported by substantial evidence. The evidence demonstrated that Hansen did not engage in substantial gainful activity although he did engage in a number of entertainment activities including skateboarding, snowboarding, and playing guitar and domestic activities including helping to care for his daughter. Furthermore, I note that the ALJ simply noted this in his credibility determination and credibility determinations are entitled to substantial deference. *Williams*, 844 F.2d at

---

[7] Although not expressly raised by Hansen, whether the ALJ adequately complied with 20 C.F.R. § 404.1520a at steps two and three is addressed in Section 3 *infra*.

755.

d. *Degree of Mental Limitation*

Hansen argues that the ALJ failed to sufficiently articulate the degree of mental limitation imposed by failing to consider the combined effect of Hansen's mental impairments and failing to give an adequate function-by-function analysis of Hansen's RFC. I disagree. First, the ALJ expressly stated that he was considering the impairments in combination when determining that Hansen was not incapable of engaging in work activities. (Admin. R. at 19.) Furthermore, when the ALJ determined Hansen's RFC, he discussed a wide range of mental issues affecting Hansen including anxiety, mood swings, concentration, sleep disturbance, motivation, intelligence, and impulsivity.

With respect to providing a function-by-function analysis, the ALJ is required to assess a claimant's "work-related abilities on a function-by-function basis." SSR 96-8P. However, this requirement focuses on physical, mental, and other abilities as defined in 20 C.F.R. § 404.1545(b)–(d). The ALJ expressly noted that Hansen had no exertional limitations and discussed Hansen's ability to engage in work-related tasks such as following instructions, responding to supervisors, interacting with the general public, and interact with co-workers. (Admin. R. at 22–23.) Therefore, remand is not appropriate.

I do note, however, that the ALJ did not expressly discuss Hansen's ability to engage in work for eight hours a day, five days a week. *See* SSR 96-8p ("RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a

discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."). Although the ALJ noted that Dr. Rinsky opined as to Hansen's ability to work eight hours a day, five days a week, the ALJ did not expressly address this aspect of Hansen's abilities. However, as Hansen does not explicitly raise this argument and the opinion does contain references to full time work, I do not think that this is reversible error.

e. *Selective reliance on the medical record*

Hansen argues that the ALJ selectively relied on the medical record to support his conclusion. This argument is discussed in Section 1 *supra*. As I stated in that section, I conclude that the ALJ did not selectively rely on the medical record. In fact, the ALJ took great care to note the full medical record and explain his reliance on certain medical records.

f. *Explain material inconsistencies or ambiguities in the case record*

Next, Hansen argues that the ALJ failed to adequately explain material inconsistencies or ambiguities in the case record. SSR 96-8p requires that "[t]he adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." I disagree, however, that the ALJ did not comply with this requirement. The ALJ actively discussed the inconsistencies in Hansen's medical record and resolved them in the opinion.

g. *Re-contact Drs. Rinsky and Benson*

Finally, Hansen argues that the ALJ failed to develop the record by recontacting Drs. Rinsky and Benson to clear up an material ambiguities. However, 20 C.F.R. §

404.1512(e) only requires that an ALJ recontact medical sources when "the evidence . . . is inadequate for us to determine whether you are disabled." Hansen has not demonstrated that the evidence before the ALJ was inadequate to determine Hansen's disability. Therefore, I conclude that the ALJ did not err in not recalling Drs. Rinsky or Benson.

3. 20 C.F.R. § 1520a

Although Hansen did not expressly raise this argument, I will construe his argument with respect to section 404.1520a liberally and apply it to the ALJ's analysis at step three as Hansen does cite to the relevant regulatory section and I ordered additional briefing on the issue (*See* Docket Nos. 22, 23).

Section 404.1520a requires that the ALJ use a "special technique" to evaluate mental impairments at steps two and three. The technique requires that the ALJ "evaluate [the claimant's] pertinent symptoms, signs, and laboratory findings to determine wether [the claimant has] a medically determinable mental impairment(s)" and if the ALJ so finds, then he "must specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s) and document [his] findings in accordance" with this section. 20 C.F.R. § 404.1520a(b)(1). The ALJ must then "rate the degree of functional limitation resulting from the impairment(s)" in activities of daily living, social functioning, concentration, persistence, or pace, and episodes of decompensation using, at least for the first three issues, none, mild, moderate, marked, and extreme. *Id.* § 404.1520a(b)–(c), (e)(2). If the degree of limitation in the first three categories is "none" or "mild" then the mental impairment is generally considered not

severe. *Id.* § 404.1520a(d)(1). However, if the claimant is found to have severe limitations, the ALJ must then "determine if it meets or is equivalent in severity to a listed mental disorder . . . by comparing the medical findings about [the claimant's] impairment(s) and the reating of the degree of functional limitation to the criteria of the appropriate listed mental disorder." The ALJ is required to "document application of the technique in the decision" and "must include a specific finding as to the degree of limitation in wach of the functional areas." *Id.* § 404.1520a(e).

In this case, there is some question as to whether the ALJ's evaluation is sufficient to comply with § 404.1520a. *See Gorgan v. Barnhart*, 399 F.3d 1257, 1264 (10th Cir. 2005) ("[T]here is a specific two-step procedure that the Commissioner must follow when determining whether a claimant has a mental impairment. The Commissioner 'must first evaluate your pertinent symptoms, signs, and laboratory findings to determine whether you have a medically determinable mental impairment(s).' 20 C.F.R. § 404.1520a(b)(1). Then the Commissioner evaluates the impact that the mental impairment has on the claimant's ability to function under 20 C.F.R. § 404.1520a(b)(2), et seq."). The ALJ did not explicitly apply section 404.1520a at steps two or three nor did he extensively discuss Hansen's medical history and functional limitations with respect to the rating system.

I do not, however, conclude that remand is appropriate. First, although the ALJ did not use the special technique at step two, he found in favor of Hansen at step two by determining that Hansen's ADHD, affective disorder, and anxiety disorder were severe impairments. Second, the ALJ did rate the four functional areas and use such ratings to

determine whether Hansen was disabled at step three.[8] The ALJ determined at step three that Hansen had no more than moderate limitations in each of the three areas and less than three periods of decompensation a year. (Admin. R. at 18.) Therefore, the ALJ did not find Hansen disabled at step three. Furthermore, the ALJ also noted in step four that Hansen's "mental impairments impose moderate impairment in his daily and social functioning, market impairment in his capacity to sustain concentration, persistence and pace, and has experienced perhaps 1–2 episodes of decompensation during the relevant time period of this decision."[9] I conclude that these two articulations of Hansen's limitations constitutes a "specific finding as to the degree of limitation in each of the functional areas" and are sufficient to document application of the standard as they specifically rate Hansen's limitations in each of the functional areas and use the ratings to analyze Hansen's alleged disability at step three. Therefore, I conclude that remand is not appropriate on this issue.

4. <u>Step Three</u>

Hansen argues that the ALJ failed to discuss concentration, persistence, and pace in the step three analysis even though he found at step four that Hansen had marked impairment in this area. It is well established that throughout the five-step

---

[8] Although this articulation was only in step three and not in step two when the ALJ considered severity, the special technique applies at both steps. *See Stokes v. Astrue*, 2008 U.S. App. Lexis 8432, at *7 (10th Cir. Apr. 18, 2008) (noting that the ALJ applies the ratings from the special technique "in determining whether the claimant's mental impairments are severe at step two and, if so, whether these severe impairments 'meet[] or [are] equivalent in severity to a listed mental disorder' at step three").

[9] *See* Section 4 *infra* for a discussion regarding the inconsistency in the ALJ's determination of the limitation on concentration, persistence and pace.

process, the ALJ is required to consider the combined effect of a claimant's impairments, even if some impairments, if considered individually, are not severe. 42 U.S.C. § 423(d)(2)(b); see also SSR 96-8p, 1996 WL 374184, at *5 ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not "'severe.'"); *Barrett v. Barnhart*, 355 F.3d 1065, 1068-69 (7th Cir. 2004) (holding that ALJ's failure to consider the cumulative effect of severe and non-severe impairments was reversible error).

In this case, the ALJ noted at step three that Hansen did not exhibit more than a moderate impairment in any of the factors necessary to meet the listing for affective disorder (12.04) or anxiety-related disorders (12.06) including "concentration, persistence, and pace." (Admin. R. at 18.) Inconsistently, the ALJ later determined that Hansen had "marked impairment in his capacity to sustain concentration, persistence, and pace." However, even if such a finding was applied to step three the outcome would not change. The relevant listings required marked impairment in two or more areas and the ALJ determined that Hansen had moderate impairment in all of them. If Hansen actually had marked impairment in one area, he would still not meet the requirements. I do note that such a change could potentially affect the "equal to" assessment of Hansen's impairments at step three. However, Hansen does not make this argument and I am skeptical that the change would materially affect the outcome at step three.

5. <u>Step Five</u>

Hansen argues that the ALJ erred at step five because the hypothetical

presented to the vocational expert failed to include all of Hansen's mental impairments including variable mood, irritability, lack of motivation, and need for structured setting. However, Hansen presents no authority requiring that the hypothetical include such items. Indeed, step five requires that the ALJ consider the claimant's RFC, age, education, and work experience, but does not require consideration of any additional requirements beyond the RFC. 20 C.F.R. § 404.1520(a)(4)(v). As Hansen's RFC did not contain any limitations based on these issues, the hypothetical presented to the vocational expert was not required to include these items. Therefore, remand is not appropriate based on this argument.

## Conclusion

Based upon my review of the record of this case, I find that the ALJ's decision is supported by substantial evidence and there was no improper application of the law. Therefore, the ALJ's decision is affirmed.

DATED at Denver, Colorado, on September 12, 2008.

BY THE COURT:

s/ Walker D. Miller
United States Senior District Judge